UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

DARRELL HARDIE and
YANIC HARDIE,

    Plaintiffs,

v.

DEUTSCHE BANK TRUST COMPANY
AMERICA and
ALTISOURCE SOLUTIONS, INC.,

    Defendants.

Civil Action No. TDC-20-1135

**MEMORANDUM OPINION**

Plaintiffs Darrell Hardie and Yanic Hardie have filed suit against Defendants Deutsche Bank Trust Company America ("Deutsche Bank") and Altisource Solutions, Inc. ("Altisource") regarding certain events arising out of a foreclosure on Plaintiffs' residence. Plaintiffs have alleged illegal trespass and conversion; violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601–2617 (2018); the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601– 1667f (2018); the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692– 1692p; the Uniform Commercial Code ("U.C.C."); unjust enrichment and constructive trust; and slander of title and libel. Presently pending before the Court is Defendants' Motion to Dismiss. Having reviewed the filings, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

The following facts are presented in the light most favorable to Plaintiffs, the non-moving parties.

Plaintiffs previously owned and occupied the residence at 11400 Riverview Road in Fort Washington, Maryland ("the Property"). In April 2006, Plaintiffs obtained a mortgage loan from First Savings Mortgage Corporation ("First Savings") secured by a deed of trust ("the Deed of Trust") recorded on September 24, 2006. On December 5, 2014, through multiple transactions, the Deed of Trust was assigned to Deutsche Bank.

On June 15, 2016, Altisource personnel came to the Property and left a flyer requesting that the owner of the home contact the company. Although Plaintiffs called Altisource and stated that they were occupying the Property as homeowners, Altisource came to the Property on multiple occasions before and during August 2016, each time leaving the same document.

On August 21, 2016, Plaintiffs discovered that Altisource had entered the Property, changed the locks, and added a lockbox with a new entry key ("the August 2016 Incident"). As of that date, the Property had not been sold through a foreclosure sale or by any other means, and no order for possession had been granted. On November 23, 2016, Plaintiffs received a Notice of Foreclosure Action for the Property and a loss mitigation form with instructions to complete and return it to a law firm, Brock & Scott, PLLC ("Brock & Scott"). Plaintiffs immediately completed the form and submitted it, and when they failed to receive a response, they resubmitted it by mail several more times.

On December 15, 2016, a foreclosure action relating to the Property ("the Foreclosure Action") was filed in in the Circuit Court for Prince George's County, Maryland ("the Circuit Court"). *See BSPLLC v. Hardie*, No. CAEF16-44265 (Cir. Ct. Prince George's Cty. filed Dec. 15, 2016), *available at* http://casesearch.courts.state.md.us/casesearch/. On July 6, 2017, Plaintiffs attended a mediation session attempting to resolve the Foreclosure Action, and during the mediation, Plaintiffs were informed that Brock & Scott would provide them with a new application

for a loan modification. Plaintiffs did not receive any such application. Several weeks after this unsuccessful mediation session, Plaintiffs received by mail a notice that the Property was going to be auctioned. On August 31, 2017, the Circuit Court entered an Order granting Deutsche Bank the right to sell the Property, subject to the possible filing of a motion to stay the sale pursuant to Maryland Rule 14-211, which provides that parties claiming a right or interest in a property may file a motion to stay the sale of the property and dismiss a foreclosure action.

On September 5, 2017, while Plaintiffs were at work, Altisource entered the Property, removed all of Plaintiffs' furniture, clothing, cars, trucks, mail, personal financial records, and other possessions, and took the items to an undisclosed location ("the September 2017 Incident"). Plaintiffs allege that Altisource was acting as a "paid agent[]" of Deutsche Bank and did not have authority to enter the Property and remove their belongings, which had a total value of over $1.5 million. Am. Compl. at 10, ECF No. 31.

On October 18, 2017, Plaintiffs filed in the Circuit Court a Motion to Void the Foreclosure, which was denied as untimely on December 26, 2017. On February 1, 2018, Plaintiffs filed a Notice of Appeal and a Motion to Stay Pending Appeal. The appeal was denied as untimely. On March 12, 2018, the Circuit Court entered a final order ratifying the foreclosure sale of the Property. On June 21, 2018, the Circuit Court granted a Motion for Possession after Sale filed by Deutsche Bank, and a writ of possession was issued on July 31, 2018.

Beginning in September 2018, Plaintiffs engaged in a series of email communications with Altisource in which they demanded the return of the personal property seized during the September 2017 Incident. As of the filing of the Complaint in this case, Altisource had not returned Plaintiffs' personal property and had not provided any information about the location of that property.

3

On May 4, 2020, Plaintiffs filed the original Complaint in this case, which was amended on October 1, 2020. In the Amended Complaint, Plaintiffs allege seven counts, the last three of which are characterized as demands under certain federal and state legal authorities. The counts are numbered as follows: (1) illegal trespass and conversion; (2) a "dual tracking" violation of RESPA and TILA; (3) unjust enrichment and constructive trust; (4) slander of title; (5) a "demand to establish the mortgage note" under TILA; (6) a demand for verification and validation of a debt under the FDCPA; and (7) a demand to present the mortgage note pursuant to the U.C.C.

## DISCUSSION

In their Motion to Dismiss, Defendants seek dismissal of this action for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants argue that (1) the trespass claim related to the August 2016 Incident and the RESPA, TILA, and slander of title claims are all time-barred; (2) all claims should be dismissed for failure to state a plausible claim for relief; and (3) to the extent that any claims remain, Deutsche Bank is not vicariously liable for the actions of Altisource.

### I. Legal Standard

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Defendants have submitted a "Joint Record" with their Motion to Dismiss consisting of 12 documents. In considering a Motion to Dismiss, courts are permitted to consider documents attached to a motion to dismiss "when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)). On this basis, the Court will consider the Deed of Trust and Assignments of the Deed of Trust. Defendants have also attached to their Motion to Dismiss a copy of the docket in *BSPLLC v. Hardie*, No. CAEF16-44265 (Cir. Ct. Prince George's Cty.), the state court foreclosure proceeding related to the Property, and a copy of the docket in *In re Hardie*, No. 14-11946 (Bankr. Md. 2014), a federal court bankruptcy proceeding involving Plaintiff Darrell Hardie. The Court takes judicial notice of these dockets. *See* Fed. R. Evid. 201(b)(2); *see Lolavar v. De Santibanes*, 430 F.3d 221, 224 n.2 (4th Cir. 2005) (taking judicial notice of a docket sheet because a court may take judicial notice of "the records of a court of record").

## II. Statute of Limitations

Defendants argue that several of Plaintiffs' claims are time-barred, including Plaintiffs' claim of trespass in August 2016 in Count 1, the dual tracking claim under RESPA in Count 2, the claims under TILA in Counts 2 and 5, and the slander of title claim in Count 4.

### A. Trespass

In Count 1, Plaintiffs allege trespass based in part on the fact that on August 21, 2016, Altisource entered the Property without permission and changed the locks for the house. Under Maryland law, however, a claim for trespass must be filed within three years from the date the action accrues. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101 (LexisNexis 2013); *Litz v. Md.*

5

*Dep't of Env't*, 76 A.3d 1076, 1086 (Md. 2013). The action accrues when the "plaintiff knows or should have known of the injury giving rise to his or her claim." *Litz*, 76 A.3d at 1086 (citation omitted).

Here, Plaintiffs allege that they discovered upon their return home on August 21, 2016 that the locks had been changed on the Property, and they immediately contacted Altisource to seek the removal of the new locks, so the trespass claim accrued on this date. Where the original Complaint was filed on May 4, 2020, more than three years after the date of the alleged trespass, the Court finds that any trespass claim in Count 1 based on the August 2016 Incident is time-barred.

### B. RESPA

In Count 2, Plaintiffs allege that Defendants violated a federal regulation which prohibits a mortgage servicer from pursuing a foreclosure action while simultaneously evaluating the borrower for a loan modification. *See* 12 C.F.R. § 1024.41(f)(2) (2020) ("If a borrower submits a complete loss mitigation application during the pre-foreclosure review . . . or before a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, a servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process."). A borrower may enforce this particular regulation only through section 6(f) of RESPA, 12 U.S.C. § 2605(f). 12 C.F.R. § 1024.41(a). Actions brought under § 2605 must be filed within three years of the accrual of the action. 12 U.S.C. § 2614.

Here, Plaintiffs have asserted that they completed and submitted several loss mitigation applications for the Property beginning on or about November 23, 2016. Despite these submissions, on December 15, 2016, the Foreclosure Action was filed in the Circuit Court.

6

Because the alleged RESPA violation was that the Foreclosure Action was filed even while Plaintiffs had pending loss mitigation applications, the RESPA claim accrued when the Foreclosure Action was filed on December 15, 2016. Where the present action was filed more than three years later, the Court finds that the RESPA claim asserted in Count 2 is time-barred and will be dismissed. The Court therefore need not address Defendants' other arguments for dismissal of this claim.

### C.  TILA

Plaintiffs reference TILA as an alternative basis for their dual-tracking claim in Count 2, and they also invoke TILA in their "Demand to Establish the Mortgage Note" asserted in Count 5. TILA has a one-year statute of limitations. *See* 15 U.S.C. § 1640(e) (providing that an action must be filed "within one year from the date of the occurrence of the violation"). Where the dual-tracking claim asserted in Count 2 is time-barred even under a three-year statute of limitations, *see supra* part II.B, any such claim based on TILA is also time-barred.

In Count 5, Plaintiffs assert that Defendants violated a provision of TILA stating that "not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer" and provide certain specified information to the borrower. 15 U.S.C. § 1641(g)(1). On such a claim, the statute of limitations begins to run at the end of that 30-day period. *See Terry v. Mortg. Elec. Registration Sys., Inc.*, No. AW-13-cv-0773, 2013 WL 1832376, at *2 n.2 (D. Md. Apr. 30, 2013) (stating that because TILA requires that notice of the sale or assignment of a mortgage loan be provided "not later than 30 days" after the transfer, the limitations period likely does not start to run until that 30–day period has expired). Here, the Assignment of the Deed of Trust to Deutsche Bank was recorded on December 5, 2014, such that

7

the 30-day period expired on or about January 4, 2015, and the limitations period thus expired in January 2016, several years before the present action was filed in 2020. Thus, the TILA claim in Count 5 is time-barred and will be dismissed.

### D.   Slander of Title

In Count 4, Plaintiffs allege that Defendants are liable for slander of title based on untrue statements made in the public county records about the Property, specifically, statements that they had defaulted on the mortgage and that the Property would be subjected to foreclosure. Under Maryland law, an action for slander, including one for slander of title, "shall be filed within one year from the date it accrues." Md. Code Ann., Cts. & Jud. Proc. § 5-105; *see Bacon v. Arey*, 40 A.3d 435, 467 (Md. Ct. Spec. App. 2012) (applying the statute of limitations provision of section 5-105 to a plaintiff's slander of title claim and dismissing it as time-barred); *Lehigh Chem. Co. v. Celanese Corp. of Am.*, 278 F. Supp. 894, 898 (D. Md. 1968) (holding that a previous version of the Maryland statute of limitations providing that slander causes of action must be brought within one year applies to claims for disparagement of property).

Although Plaintiffs do not specify when the alleged slander of title occurred or which property records contain the disparaging language, *see* Am. Compl. ¶¶ 55-57, all of the court records and other public records relating to the Property that are referenced in the Amended Complaint were filed, docketed, or recorded on or before May 23, 2018, and Plaintiffs make no factual allegations relating to any events occurring after October 15, 2018. Where any slander of title claim asserted in the Amended Complaint is necessarily based on statements made before October 2018, more than one year before the filing of the original Complaint, the Court finds that the slander of title claim is barred by the statute of limitations. The Court therefore need not address Defendants' other arguments for dismissal of Count 4.

### III. Trespass and Conversion

As to the trespass and conversion claims in Count 1 based on the September 2017 Incident, Defendants argue that Plaintiffs have failed to state claims for trespass or conversion because the Deed of Trust provided explicit authority for the lender to enter the Property if Plaintiffs were in default on the mortgage.

#### A. Trespass

Under Maryland law, "[t]he longstanding common law tort of trespass is generally defined as an intentional or negligent intrusion upon or to the possessory interest in property of another." *Uthus v. Valley Mill Camp, Inc.*, 246 A.3d 1225, 1239 (Md. 2021) (quoting *Litz*, 131 A.3d at 936). To prevail in a trespass action, plaintiffs must establish: "(1) an interference with a possessory interest in [their] property; (2) through the defendant's physical act or force against that property; (3) which was executed without [their] consent." *Id.* Defendants dispute only the third element based on the argument that the terms of the Deed of Trust provided them with consent and authority to enter the Property.

The Deed of Trust explicitly states that where a borrower fails to perform "the covenants and agreements" in the Deed of Trust, such as when the borrower fails to pay, when due, principal, interest, and other charges related to the mortgage, the Lender may act to protect its interest in the Property, including by "[s]ecuring the Property." Deed of Trust ¶ 9, ECF No. 35-1. "Securing the Property" is defined as "includ[ing], but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off." *Id.* While Defendants are therefore correct that Plaintiffs, as parties to this agreement, effectively consented to the Lender entering the Property in the case of a failure to pay required charges under the

9

mortgage, such consent only "constitutes a complete defense, so long as the scope of that consent is not exceeded." *Mitchell v. Balt. Sun Co.*, 883 A.2d 1008, 1014–15 (Md. 2005).

Here, Plaintiffs have alleged that Defendants' actions upon entering the Property were outside of the scope of activity agreed to and authorized in the Deed of Trust. That authorization consisted of entry to secure the Property, and the actions listed in the Deed of Trust as within the scope of securing the Property, while not exhaustive of all the actions a lender could take in furtherance of that purpose, all relate to "protecting and/or assessing the value of the Property," and "securing and/or repairing the Property." Deed of Trust ¶ 9. The act of removing all personal property before the Circuit Court had issued an order awarding judgment of possession of the Property, and never returning it, appears to fall outside the scope of securing the Property. Where, at this stage, the Court must construe the factual allegations in the light most favorable to Plaintiffs, it finds that Plaintiffs have sufficiently alleged an entry that exceeded the scope of the authorization provided by the Deed of Trust. *See Nieporte v. Citimortgage, Inc.*, No. 11-10940, 2011 WL 3032331, at *5 (E.D. Mich. July 25, 2011) (finding that the "clear language of the mortgage contract" allowing a lender to enter the premises, change locks, and secure the property from damage "cannot be understood as allowing [a lender] to authorize one of its agents to simply confiscate and/or discard at will all of the personal property found in the house"). The Motion will therefore be denied as to the trespass claims in Count 1 based on the September 2017 Incident.

### B. Conversion

Under Maryland law, conversion consists of "any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it." *Allied Inv. Corp. v. Jasen*, 731 A.2d 957, 963 (Md. 1999) (quoting *Interstate Ins. Co. v. Logan*, 109 A.3d 904, 907 (Md. 1954)). Conversion can occur "either by initially acquiring the

property or by retaining it longer than the rightful possessor permits." *Darcars Motors of Silver Spring, Inc. v. Borzym*, 841 A.3d 828, 835 (Md. 2004).

Defendants argue that the conversion claims should be dismissed because Plaintiffs' personal property was deemed abandoned pursuant to Prince George's County Code § 13-164, and because Plaintiffs should be judicially estopped from claiming that the value of their personal property was more than $1.5 million because that claim is inconsistent with statements made in 2014 in a Chapter 13 bankruptcy case filed by Darrell Hardie. These arguments are not persuasive.

First, Prince George's County Code § 13-164 is not relevant. This provision states that "[a]fter a warrant of restitution is executed, the landlord shall dispose of the property of a tenant," and that "[a]ny property removed from the leased premises pursuant to a properly issued warrant of restitution shall be deemed abandoned." Prince George's Cty. Code § 13-164. Beyond the obvious fact that this provision addresses landlord-tenant relationships and leased premises, which are not at issue here, there is no allegation or evidence that a warrant of restitution, also typically employed in tenant eviction proceedings, was issued prior to the September 2017 Incident. *Schuman, Kane, Felts & Everngam, Chartered v. Aluisi*, 668 A.2d 929, 933 (Md. 1995) (holding that "[b]ecause it is an order issued by the court, which permit[s] the landlord to regain possession of his premises upon default in the payment of rent by the tenant . . . a warrant of restitution does issue out of summary ejectment proceedings" and "issues at the request of the landlord").

Second, judicial estoppel does not bar the conversion claims. "[J]udicial estoppel is an equitable doctrine, designed to 'protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *Martineau v. Wier*, 934 F.3d 385, 393 (4th Cir. 2019) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001)). Judicial estoppel is typically "reserved for cases where the party to be estopped . . .

11

has taken a later position that is 'clearly inconsistent' with [an] earlier one." *Id.* (quoting *New Hampshire*, 532 U.S. at 750-51). "[A] court must consider each case's 'specific facts and circumstances' before holding a claim barred by judicial estoppel." *Id.* at 394 (quoting *King v. Herbert J. Thomas Mem'l Hosp.*, 159 F.3d 192, 196 (4th Cir. 1998)).

Beyond the fact that their judicial estoppel argument relies on facts well beyond the allegations in the Amended Complaint, Defendants have failed to show a clear inconsistency between the positions taken in the present case and in the bankruptcy case. Defendants' argument centers on the fact that Darrell Hardie reported only $8,350 in personal property on a bankruptcy schedule submitted in April 2016, while he claims that $1.5 million in personal property was the subject of the conversion by Altisource. However, that filing was submitted 17 months before the September 2017 Incident, and Darrell Hardie received a bankruptcy discharge in February 2017, seven months before that incident. Moreover, Darrell Hardie was the only party to the bankruptcy case, and his statement related to his own personal property, while the claim of $1.5 million in personal property relates to the combined property of both Darrell and Yanic Hardie. Finally, the Court notes that even if the value of the personal property proved to be substantially less than $1.5 million, Plaintiffs could still have a viable conversion claim. In light of these considerations, and where at this motion-to-dismiss stage, the Court has only limited information relating to the positions taken by Darrell Hardie in the bankruptcy court, the Court will not apply judicial estoppel to bar the conversion claims. The Court will therefore deny the Motion as to the conversion claims in Count 1.

## IV. Unjust Enrichment and Constructive Trust

In Count 3, Plaintiffs assert claims of unjust enrichment and constructive trust. Defendants argue that these claims should be dismissed because: (1) constructive trust is not a recognized

cause of action under Maryland law; (2) Plaintiffs did not allege that Altisource retained the personal property at issue and was thus enriched; and (3) a claim of unjust enrichment against Deutsche Bank is unavailable because there is an express contract governing the relationship between Plaintiffs and Deutsche Bank.

### A. Constructive Trust

As a preliminary matter, "[a] constructive trust is an equitable remedy, not a cause of action in itself." *Chassels v. Krepps*, 174 A.3d 896, 904 (Md. 2017); *see also New Amsterdam Cas. Co. v. Waller*, 301 F.2d 839, 842 (4th Cir. 1962) (stating that "[a] constructive trust is merely a procedural device by which a court of equity may rectify certain wrongs" and that "it is not a designation of the cause of action which justifies an exercise of the power"). Any constructive trust claim will therefore be dismissed.

### B. Unjust Enrichment

Unjust enrichment consists of three elements: (1) "[a] benefit conferred upon the defendant by the plaintiff; (2) "[a]n appreciation or knowledge by the defendant of the benefit"; and (3) "[t]he acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 351 (Md. 2007). "A person who receives a benefit by reason of an infringement of another person's interest, or of loss suffered by the other, owes restitution to him in the manner and amount necessary to prevent unjust enrichment." *Id.* at 352 (quoting *Berry & Gould, P.A. v. Berry*, 757 A.2d 108, 113 (Md. 2000)).

In the Amended Complaint, Plaintiffs allege that the personal property removed from their house in September 2017 was "destroyed" by Defendants, Am. Compl. ¶ 35, but then separately assert that the personal property was transferred to Deutsche Bank, which accepted and retained

13

it. These allegations do not state a claim for unjust enrichment against Altisource because, regardless of whether the personal property was destroyed or transferred to Deutsche Bank, Plaintiffs have not alleged that Altisource retained the personal property, or received proceeds from the disposition of such property, to their benefit. Where the nature of the unjust enrichment claim is aimed at "forcing the defendant to disgorge benefits that it would be unjust for him to keep," *Hill*, 936 A.2d at 352 (quoting *Mass Transit Admin. v. Granite Const. Co.*, 471 A.2d 1121, 1126 (Md. 1984)), but Plaintiffs have not pleaded what, if any, benefit Altisource has unfairly retained as a result of the September 2017 Incident, the Court will grant the Motion as to the unjust enrichment claim against Altisource.

As for Deutsche Bank, Defendants argue that the unjust enrichment claim fails because "[i]t is settled law in Maryland, and elsewhere, that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties." *FLF, Inc. v. World Publications, Inc.*, 999 F. Supp. 640, 642 (D. Md. 1998). Defendants argue that where Plaintiffs have noted that Deutsche Bank did not credit their mortgage account for the value of the allegedly stolen personal property, the subject matter of the unjust enrichment claim is covered by the contractual agreement between Plaintiffs and Deutsche Bank, specifically, the Deed of Trust. While the Deed of Trust requires the "payment of principal, interest, escrow items," and other charges, as well as the "application" of such "payments or proceeds" to pay down the mortgage loan, Deed of Trust ¶¶ 1-2, noticeably absent are any contract terms or statement of the lender's rights relating to Plaintiffs' personal property located at the Property. There is no discussion of personal property at all. Notably, the principle that unjust enrichment claims cannot be brought if the subject matter of the claim is covered by an express contract between the parties does not apply if "the express contract does not fully address a subject matter." *Cty. Comm'rs of*

14

*Caroline Cty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 608–09 (Md. 2000). Here, the Court finds that the Deed of Trust does not preclude Plaintiffs' unjust enrichment claim because the taking and disposal of personal property is not within the scope of the existing contract. Thus, the Court will deny the Motion as to the claim of unjust enrichment against Deutsche Bank in Count 3.

## V.    FDCPA

In Count 6, Plaintiffs assert, pursuant to the FDCPA, a demand "to verify and validate ownership and control of all promissory debt under the Mortgage Note" and to "account for all payments and counterparty guarantees under the FDCPA." Am. Compl. at 19. Plaintiffs appear to invoke the FDCPA provision that "[i]f the consumer notifies the debt collector in writing within the thirty-day period" after a debt collector's initial communication with a consumer "that the debt, or any portion thereof, is disputed . . . the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment . . . and a copy of such verification or judgment . . . is mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(b). Plaintiffs, however, have not asserted any facts to demonstrate that upon Deutsche Bank's initial contact with them, they made a written request within the appropriate time period that would trigger Defendants' responsibility to provide verification of outstanding debt. The FDCPA claim will therefore be dismissed for failure to state a plausible claim for relief. Where Plaintiffs' passing references in Count 6 to an unspecified RESPA claim and a libel claim are accompanied by an insufficient basis to support such violations, and any libel claim would also be barred by the one-year statute of limitations, *see* Md. Code Ann., Cts. & Jud. Proc. § 5-105, any such claims will also be dismissed for failure to state a claim.

Thus, where Plaintiffs have failed to sufficiently allege a viable cause of action under the FDCPA or RESPA, or for libel, the Court will grant the Motion as to Count 6.

## VI. U.C.C.

In Count 7, Plaintiffs assert a demand under U.C.C. § 3-501 and RESPA that Defendants present the original mortgage note to them in order to compel Defendants to "establish their credit and rights to the secured Promissory Note" linked to the Property. Am. Compl. at 19.

As a preliminary matter, because the U.C.C. is a model code, it has no legal effect in and of itself. However, the U.C.C. has been codified in Maryland. *See* Md. Code Ann., Com. L. § 1-103; *Hartford Fire Ins. Co. v. Md. Nat'l Bank, NA.*, 671 A.2d 22, 32 (Md. 1996) (referencing "Maryland's adoption of the UCC"). The Court accordingly construes this claim as arising under the state law claim analog, which is identical to the U.C.C. provision. *See* Md. Code Ann., Com. Law § 3-501. Under section 3-501, "[u]pon demand of the person to whom presentment is made, the person making presentment must (i) exhibit the instrument, (ii) give reasonable identification and, if presentment is made on behalf of another person, reasonable evidence of authority to do so, and (iii) sign a receipt on the instrument for any payment made or surrender the instrument if full payment is made." *Id.*

Under Maryland law, the right to enforce a deed of trust automatically follows the note, making the two inseparable. *Deutsche Bank Nat'l Trust Co. v. Brock*, 63 A.3d 40, 48 (Md. 2013). Therefore, "[t]he title to any promissory note . . . conclusively is presumed to be vested in the person holding the record title to the mortgage." Md. Code Ann., Real Prop. § 7-103(a) (LexisNexis 2015). Here, the Deed of Trust to the Property passed by assignment from the original lender, First Savings, to Deutsche Bank, was recorded in the relevant real property records on December 5, 2014, and has been provided to Plaintiffs. Deutsche Bank is therefore "conclusively

presumed" to have the right to enforce the promissory note attached to the Deed of Trust. Courts in this district have thus repeatedly rejected "show me the note" arguments in which a party demands production of the original note. *See Jones v. Bank of N.Y. Mellon*, No. DKC-13-3005, 2014 WL 3778685, at *4 (D. Md. July 29, 2014); *Harris v. Household Fin. Corp.*, RWT-14-606, 2014 WL 3571981, at *2 (D. Md. July 18, 2014) (finding that "there is no recognizable claim" that a mortgagor must "produce 'wet ink' signature documents" in order for a mortgage to be valid). Thus, Plaintiffs' claim under U.C.C. § 3-501 fails.

As for Plaintiffs' reference to RESPA as part of their demand under U.C.C. § 3-501, they do not specify what provision of the statute is at issue or how any particular action or inaction by Defendants violated RESPA. Accordingly, the Court will dismiss any claim made under RESPA in Count 7 for failure to state a claim and will thus grant the Motion as to the entire count.

### VII. Vicarious Liability

Finally, where the Court has concluded that the trespass and conversion claims arising from the September 2017 Incident may proceed, Deutsche Bank argues that any trespass or conversion was perpetrated by Altisource, and that there is no basis to impose vicarious liability on Deutsche Bank for the actions of Altisource because Altisource was not an agent of Deutsche Bank and instead was just an independent contractor.

In Maryland, a principal may be held vicariously liable for the acts of its agents. *Cox v. Prince George's Cty.*, 460 A.2d 1038, 1039 (Md. 1983) (stating that "[it] is settled law, and fundamental to the concept of vicarious liability under the doctrine of *respondeat superior*, that the tortious actor must be the servant or agent of the one sought to be held liable, that is, that a master-servant or principal-agent relationship must exist"). A person may be deemed an agent of a principal if the person has "authority to act" that "come[s] from the principal." *Tobacco Tech.,*

*Inc. v. Taiga Int'l N.V.*, 388 F. App'x 362, 369 (4th Cir. 2010) (quoting *Progressive Cas. Ins. Co. v. Ehrhardt*, 518 A.2d 151, 155 (Md. 1986)). "[A]n agency relationship can be created by express agreement or by inference from the acts of the agent and principal," and it "may be implied from the words and conduct of the parties and the circumstances." *Green v. H & R Block, Inc.*, 735 A.2d 1039, 1047-48 (Md. 1999) (citations omitted).

Here, although Plaintiffs do not claim that Deutsche Bank itself entered the Property and removed their belongings, they have specifically alleged that Altisource was acting as "paid agents" of Deutsche Bank when its personnel entered, "removed all personal property from the premises" without Plaintiffs' authorization, and transferred it to Deutsche Bank, which accepted and retained it. Am. Compl. at 10, ¶¶ 36, 39. Although Deutsche Bank has asserted that Plaintiffs have not alleged facts supporting an agency relationship, it has also argued that there was no trespass by either Defendant because the Deed of Trust provided Deutsche Bank, as the lender, with the authority to enter the Property upon a default on the mortgage, such that Deutsche Bank has effectively acknowledged that Altisource was acting pursuant to Deutsche Bank's authority. The Deed of Trust specifies that Deutsche Bank's authority to enter the Property was for the specific purpose of "[s]ecuring the Property," with specific examples of actions within the scope of that authority. Deed of Trust ¶ 9.

The fact that Altisource was plainly acting pursuant to Deutsche Bank's authority under the Deed of Trust does not necessarily establish that Altisource was an agent of Deutsche Bank rather than an independent contractor. *See Brady v. Ralph Parsons Co.*, 520 A.2d 717, 730 n.26 (Md. 1987) (clarifying that "[a] person who contracts to accomplish something for another . . . but who is not acting as a fiduciary for the other, is a non-agent independent contractor" (quoting Restatement (Second) of Agency § 14N cmt. B)). To resolve that question would require more

facts, likely unavailable to Plaintiffs at this time, on the specific agreement between Deutsche Bank and Altisource and the degree of control exercised by Deutsche Bank over Altisource's actions. *See Green*, 735 A.2d at 1048 (holding that Maryland courts "consider[] three characteristics as having particular relevance to the determination of the existence of a principal-agent relationship: (1) the agent's power to alter the legal relations of the principal; (2) the agent's duty to act primarily for the benefit of the principal; and (3) the principal's right to control the agent").

At this stage, however, where the Court must draw all reasonable inferences in favor of the non-moving party, it is reasonable to infer that in light of the clearly defined purpose of any lawful entry by Deutsche Bank, it would have exercised sufficient direction and control over Altisource's actions to support an agency relationship. The allegation that Altisource actually transferred Plaintiffs' personal property to Deutsche Bank supports the conclusion that the removal of the personal property was within the scope of the direction provided by Deutsche Bank. Under these circumstances, the Court concludes that Plaintiffs have sufficiently alleged an agency relationship between Deutsche Bank and Altisource. *See Nieporte*, 2011 WL 3032331, at *4-5 (finding that the plaintiff had sufficiently alleged an agency relationship where a property preservation company entered into the plaintiff's home to change locks, winterize the pipes, and remove personal property on behalf of the lender); *Jackson v. Bank of New York*, No. 11-CV-6410, 2012 WL 2503956, at *2 (N.D. Ill. June 28, 2012) (finding that at the motion to dismiss stage, the plaintiff's allegations about the relationships between a lender, the mortgage services, and the asset management company that winterized the property that was the subject of a foreclosure were sufficient to satisfy the requirement that the plaintiff allege that the asset management company was acting as an agent of the lender). Thus, the Court will deny the Motion as to Deutsche Bank's

argument that the allegations do not provide a basis for holding Deutsche Bank vicariously liable for the actions of Altisource.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss will be GRANTED IN PART and DENIED IN PART. The Motion will be granted in that the trespass and conversion claims in Count 1 relating to the August 2016 Incident, the constructive trust claims against both Defendants and the unjust enrichment claim against Altisource in Count 3, and Counts 2, 4, 5, 6, and 7 will be dismissed. The Motion will be denied as to the trespass and conversion claims in Count 1 relating to the September 2017 Incident and the unjust enrichment claim against Deutsche Bank in Count 3. A separate Order shall issue.

Date: June 16, 2021

THEODORE D. CHUANG
United States District Judge